IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00467-RBJ

SAMUEL K. GILES,

     Plaintiff,

v.

ALTO PARTNERS, LLLP,

     Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

In this housing discrimination lawsuit, defendant Alto Partners, LLLP moves for summary judgment. ECF No. 67. For the reasons stated herein, the motion is GRANTED.

### BACKGROUND

Samuel K. Giles, an African-American individual, rents an apartment in Terrace Gardens Apartments that is owned and operated by the Adams County Housing Authority ("ACHA"). ACHA provides subsidized housing for qualified residents of Adams County as part of the Low Income Housing Tax Credit Program ("LIHTC"). In October 2017 ACHA informed Terrace Gardens residents that they might be displaced by construction of a new housing development on the site. However, they could apply to relocate to another new development called Alto Apartments and avoid any future displacement. Alto Apartments is owned by defendant Alto Partners LLLP ("Alto") and operated by ACHA. Alto and ACHA appeared and are represented together, so I refer to them collectively as defendant.

Mr. Giles applied and designated unit #215 as his unit of choice, but his application was not accepted. For housing complexes participating in LIHTC, ACHA generally must determine that applicants' income falls between a certain maximum and minimum.[1] ECF No. 67-21. Mr. Giles, who is self-employed, completed his initial application and submitted a number of documents. ACHA told Mr. Giles that they could not verify that he had the minimum required income and requested additional documents, some of which Mr. Giles provided, some of which he chose not to provide. ACHA eventually denied Mr. Giles' application, citing inability to verify that he met the income requirements. ECF No. 67.

Mr. Giles filed this lawsuit on February 26, 2018, seeking to prevent defendants from leasing or selling unit #215. In his Amended Verified Complaint he asserts seven claims for relief: (1)–(4) violations of the Fair Housing Act of 1968, brought under Title VIII of the Civil Rights Act of 1968; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; and (7) unlawful and unfair housing practices under Colo. Rev. Stat. § 24-34-502. ECF No.8. All of Mr. Giles' claims ultimately incorporate and depend on his allegation that ACHA discriminated against him because of his race, and that their reasons for denying his application were pretexts for racial discrimination.

---

[1] The information provided by the parties suggests that for Alto Apartments the maximum income limit was $35,280. ECF No. 67-25. The minimum income limit was 2.5 times the monthly rent of the unit. Mr. Giles' desired unit #215 rented for $1,134 per month. *Id.* Thus, for unit #215, 2.5 the monthly rent was $2,835, and the minimum yearly income for that unit would be $34,020. That would mean that an applicant for that unit would have to demonstrate annual income between $34,020 and $35,280. A small sliver of eligibility such as that makes no sense. Mr. Giles did not allege that these eligibility criteria in themselves could provide evidence that ACHA was attempting to keep him out, but I myself became suspicious of ACHA's motives for creating such a narrow window into which applicants must fit. Though it does appear that ACHA began enforcing these particular income limitations before Mr. Giles' application appeared, I remain confused as to why ACHA would make qualification for residence in their buildings so difficult. ECF No. 67-25 (ACHA's income limits for Alto Apartments leased in 2017. The document states that these limits were released on April 14, 2017 and according to the document itself, "must be implemented no later than May 29, 2017").

This Court held a hearing on Mr. Giles' request for a temporary restraining order or preliminary injunction preventing defendants from leasing or selling unit #215. The request was denied. ECF No. 13. On appeal the Tenth Circuit affirmed the denial, finding that Mr. Giles had not demonstrated a "clear and unequivocal right to relief." *Giles v Alto Partners, LLLP*, 762 F. App'x 505, 509 (10th Cir. 2019) (unpublished). Among other things the court noted that Mr. Giles had been a tenant at Terrace Gardens for years without incident, and that Alto stated in court that it will accept Mr. Giles' application when a unit opens, provided that he qualifies. *Id*.

Mr. Giles also filed two additional suits, one in the Adams County District Court and the other in this district, seeking the same equitable relief.[2] On April 20, 2018 defendants filed a motion to dismiss Mr. Giles' complaint claiming it was precluded by Mr. Giles' voluntary dismissal of his second and third lawsuits. ECF No. 20. This Court found that though Mr. Giles' voluntary dismissal operated as an adjudication on the merits, this did not preclude Mr. Giles' original claim. ECF No. 37.

Now defendant has moved for summary judgment. They argue that there is evidence that Mr. Giles was not financially qualified for residence in Alto Apartments, and that he has presented no evidence other than conclusory statements showing that his application was denied for discriminatory or pretextual reasons. ECF No. 67.

## STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving

---

[2] For a full summary of these lawsuits, which Mr. Giles voluntarily withdrew, *see* ECF No. 37.

party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A

fact is material "if under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Court will examine the factual record and make reasonable inferences therefrom in the light

most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City*

*and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

Mr. Giles has brought five out of seven of his claims under the Fair Housing Act (FHA).

42 U.S.C.A. § 3601. The Tenth Circuit evaluates FHA discrimination claims under the three-

part *McDonnell Douglas* analysis. *Asbury v. Brougham,* 866 F.2d 1276, 1279 (10th Cir. 1989)

(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Though *McDonnell* was an

employment discrimination case, courts apply the *McDonnell* standard to claims under other

statutory antidiscrimination laws. *See, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir.

2008); *Miller v. Poretsky*, 595 F.2d 780, 795 (D.C. Cir. 1978); *Asbury*, 866 F.2d at 1279.

Under the *McDonnell* standard the plaintiff must first offer proof of a prima facie case of

discrimination. *Id.* The burden then shifts to the defendant to show that the refusal to rent or

negotiate was motivated by legitimate, non-racial considerations. *Id.* Then the burden shifts

back to the plaintiff to show that these reasons were pretextual. *Id.* At this third step, to avoid

summary judgment, the plaintiff need only show that "there is a genuine dispute of material fact"

as to whether the "proffered reason for the challenged action is pretextual." *Randle v. City of*

*Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (applying *McDonnell* to employment discrimination).

To show pretext a plaintiff has several options open to him. First, he may demonstrate that the proffered reason for the action is factually false. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017). Second, he may demonstrate that "discrimination was a primary factor" in the defendant's decision. *Id*. This can often be achieved "by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in the defendants' proffered reason "such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id*. Finally the plaintiff may also show pretext by demonstrating that the defendant "acted contrary to written company policy, an unwritten company policy, or a company practice." *Id*.

Aside from the FHA Mr. Giles has two other claims. He claims defendant's discrimination breached the Land Use Restriction Agreement between Alto Partners and Colorado Housing and Finance Authority (CHFA). He also claims defendant violated the Colorado Unfair Housing Practices Act. Colo. Rev. Stat. § 24-34-502. As the Tenth Circuit noted, because these claims are predicated on discriminatory housing practices, they depend on Mr. Giles' allegations of race-based discrimination and need not be addressed separately from the FHA claims.[3]

## ANALYSIS

Defendant raises three arguments in its motion: (1) Mr. Giles' housing application was denied because ACHA could not verify that he met the minimum income requirements; (2) Mr. Giles' refusal to produce his 2017 tax returns and profit and loss statement justifies his denial,

_____

[3] *Giles*, 762 F. App'x at 509 ("Those arguments are all predicated on unsupported allegations of discriminatory housing practices."). To any extent that the two contract claims could be viewed as being independent of Mr. Giles' claim of racial discrimination, however, there is no basis for federal jurisdiction over them other than supplementary jurisdiction pursuant to 28 U.S.C. § 1367. Because the Court in dismissing all claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

and that once the documents were produced, they showed he was not income-qualified for Alto

Apartments, and (3) Mr. Giles has presented no evidence of race-based discrimination. ECF No.

67. The first two arguments address defendant's burden to show their action has a legitimate,

non-racial justification. The third argument attempts to counter Mr. Giles' claim that these

reasons are pretextual.

### A. Mr. Giles' Application Was Denied Because ACHA Could Not Verify His Income Met the Minimum Income Requirements.

Defendant claims that ACHA neutrally applied their income verification requirements to

Mr. Giles' application. ECF No. 67. ACHA relies on a manual published by the Colorado

Housing and Finance Authority (CHFA) for LIHTC administrators in order to help them comply

with the Land Use Restriction Agreement and the IRS Code. Low-Income Housing Tax Credit

Compliance Manual ("CHFA Compliance Manual"). To comply with IRS Code, the CHFA

Compliance Manual requires LIHTC administrators to get third-party verification of applicants'

income. CHFA Compliance Manual, § 3.18.

CHFA Compliance Manual § 3.18(B), "Self-Employment Income," lists what self-

employed applicants must provide for third-party income verification. The list includes a

"Certification of Income for Self-Employed Persons" form, a "business plan summary," "year-

to-date profit and loss statement," and applicant's "most recent federal tax return," including IRS

forms 1040 and Schedule C. CHFA Compliance Manual § 3.18(B). § 3.18(B) also allows

applicants to submit their most recent annual profit and loss statement if the person does not file

annual tax returns.

Mr. Giles reported exclusively self-employment income on his initial application. ECF

No. 67-21. In order to verify his income ACHA requested copies of Mr. Giles' most recent tax

returns, profit and loss statement, a business plan, and certification of income for self-employed

persons forms. ECF No. 67-23 and 67-24. Mr. Giles returned the certification forms, a business plan, a 2016 personal tax return, and a 2016 profit and loss statement for his business. ECF No. 67-23 and 67-24. Defendants say that because Mr. Giles' 2016 tax return showed that his business did not net a profit during 2016, ACHA could not qualify Mr. Giles based on his self-employment net earnings. ECF No. 67.

Mr. Giles told ACHA that he made $27,500 from wages he paid himself, so ACHA then attempted to third-party verify Mr. Giles' income from wages. Though the Schedule C for Mr. Giles' business showed $27,500 going to wages, this amount did not appear in the income section of Mr. Giles' personal 1040 form. ECF No. 67-24. Additionally, defendant points out that even if ACHA had been able to verify Mr. Giles' $27,500 wage income, this still would not meet the $34,020 minimum income requirements. *Id.* Between his profit and loss statement showing negative net income, and Mr. Giles' self-reported wages falling below the minimum requirement, defendant has presented reasonable non-discriminatory justifications for denying Mr. Giles' application.

### B. Mr. Giles Did Not Timely Produce Required Documents, and Once He Did Produce Them, They Showed He was Not Income Qualified.

Between December and February of 2017–2018, ACHA requested Mr. Giles provide his 2017 profit and loss statement numerous times. ECF No. 67-11, 67-12, and 67-20. When asked Mr. Giles either refused to produce the document or produced the same 2016 statement he provided in November 2017. According to defendants, this alone constitutes a sufficient basis for rejection of Mr. Giles' application.[4]

---

[4] ECF No. 67-21, the ACHA "Rental Application" states that "[a]ny refusal to supply information or give access will be a denial under programmatic regulations if applicable to the community."

During this litigation, Mr. Giles was ordered to and did produce his 2017 tax returns and profit and loss statement. ECF No. 67-16. The 2017 profit and loss statement showed a net loss of $5,841, and the Schedule C showed wages of $29,500, both of which are insufficient to income qualify Mr. Giles. *Id.* So, even if the defendants had considered the 2017 documents, they claim they would have rejected the application.

Between these two arguments, the defendants have met their low burden of showing a non-discriminatory justification for their action.

### C. Lack of Direct Evidence of Discrimination or Pretext

Defendant further argues that Mr. Giles has not presented any non-conclusory evidence of discriminatory intent, or any evidence that defendant's non-discriminatory justifications are pretextual, such that no material fact is therefore in dispute. To evaluate this argument I consider Mr. Giles' response to defendant's motion. In order to avoid summary judgment Mr. Giles must show some evidence disputing defendant's non-racial justifications. He can do so by providing something more than conclusory statements showing defendant's discriminatory intent or evidence of pretext as outlined above.

### 1. Direct Evidence of Racial Discrimination

In Mr. Giles' response he alleges that ACHA Director of Property Operations Zachery Guerin has made statements providing direct evidence of discriminatory intent. Mr. Giles cites Mr. Guerin's statement that he would not override Mr. Giles' rejection on the basis of a protected class. ECF No. 69-28. Mr. Giles argues that Mr. Guerin's statement shows that defendants expressly used "a classification based on protected class," which is direct evidence of discriminatory intent. ECF No. 69-2 at ¶ 31. To the contrary Mr. Guerin's statement suggests that the defendants' refused to discriminate in favor of or against a protected class when

evaluating Mr. Giles' application.  In contrast, the evidence presented by Alto strongly supports

its position that there was no discrimination against Mr. Giles based on his race.  In short, the

evidence presented on this issue does not raise a genuine dispute of material fact.

      2.  <u>Pretext</u>

The rest of Mr. Giles' allegations amount to claims that ACHA improperly conducted his

income verification.  Because this lawsuit alleges race-based discrimination I will construe these

allegations as claims that ACHA deviated from its stated or written policy.

Mr. Giles argues that defendants failed to comply with several sources of written policy.

Mr. Giles relies on the CHFA Compliance Manual and the Department of Housing and Urban

Development (HUD) Handbook 4350.3.  ECF No. 69-2 at ¶ 33-54.  The defendants acknowledge

that because CHFA oversees the LIHTC program in Colorado, they must "strictly comply" with

the CHFA manual. ECF No. 67 at 3-4.  Because defendants use the CHFA Compliance Manual

to calculate income for the LIHTC program, it constitutes their stated policy for purposes of

evaluating pretextual deviations.

The CHFA Compliance Manual addresses the relevance of the HUD Handbook: it states

that the LIHTC program relies on the HUD Handbook for guidance in determining how to count

and calculate income and assets. CHFA Compliance Manual, § 3.18.  However, the same section

also states that because the IRS has not adopted HUD's most recent income verification

requirements, in order to comply with IRS requirements, "CHFA will continue to require full

third-party documentation."  *Id*.  The manual notes that for this reason the CHFA income

verification requirements "now differ from those" in HUD's current handbook.  *Id*. at § 3.18.

As stated by both this Court and the Tenth Circuit in affirming this Court's preliminary injunction ruling, mere miscalculation of Mr. Giles' eligibility is not enough to show pretext.[5] So, to show pretextual policy deviation, Mr. Giles will have to show that the defendants did not just miscalculate while trying to apply the CHFA Compliance Manual, but rather deviated from the CHFA prescribed calculation method.

Mr. Giles first claims that under the CHFA Compliance Manual defendant should have used "annual income" but instead used net income from his business. ECF No. 69-2 at ¶ 24. The CHFA Compliance Manual lays out the calculation for annual household income, which it defines as "the gross income a family anticipates it will receive in the 12-month period following the effective date of the certification of income." CHFA Compliance Manual, § 3.6. The CHFA Compliance Manual states that the calculation should include "gross earned income … such as wages, salaries … [and] net income of any kind of personal property." *Id.* Additionally, under § 3.9, "Business Income: Business Owners and Self-Employed Persons," the manual provides that "[w]hen calculating annual income, [landlords] must include net income from the operation of a business and any self-employment income received by the applicant/resident. Net income is gross income less business expenses, interest on certain loans and depreciation, computed on a straight-line basis." *Id.*, at § 3.9.

The CHFA Compliance Manual also specifies what kind of documents allow ACHA to verify income. The manual requires "third party verification," meaning it cannot usually rely on applicant's statements of their income but rather must often acquire documentation of income from a third party such as an employer. *Id.* at § 3.18.

---

[5] "Even if Alto did miscalculate Giles' eligibility for the apartment in question or present inconsistent reasons for the denial of his application, the connection to his race is wholly lacking. As the district court keenly explained during the hearing, mathematical errors alone do not support the claims asserted in this case." *Giles*, 762 F. App'x, at 509.

ACHA attempted to calculate Mr. Giles' annual income based on income from self-employment that was the only income he reported. ECF No 67-21. ACHA initially calculated Mr. Giles income based on his business's net income, reported in the business's 2016 Profit and Loss Statement, which was negative for the 2016 year. ECF No. 67-12. Defendants also noted that Mr. Giles told ACHA that he was paying himself a salary of $27,500 from his business's gross income. ECF No. 67 at 13. This $27,500 amount does match the expenses listed as "wages" paid out on the 2016 Profit and Loss Statement. ECF No. 69-8. However, ACHA was unable verify this because the amount did not appear in the income section of Mr. Giles' 2016 individual 1040 form. ECF No. 67-24. Because it did not appear on Mr. Giles' personal tax forms, ACHA could not verify this amount as Mr. Giles' reported $27,500 in income.

This calculation does not, as Mr. Giles argues, show a deviation from the CHFA Compliance Manual, but instead shows defendant's attempts to comply with it. Though CHFA Compliance Manual § 3.6 does state gross income from wages, § 3.9 makes clear that net income should be used for applicant-owned businesses. It appears that ACHA attempted to calculate Mr. Giles net business income and reasonably did not include the reported $27,500 because they could not verify it.

Second, Mr. Giles claims that ACHA incorrectly deducted business expansion expenditures from his income evaluation. The CHFA Compliance Manual requires that expenses for business expansion not be calculated against net income. CHFA Compliance Manual, § 3.9. Mr. Giles claims that in addition to his 2016 salary of $27,500, he used $7,500 for business expansion purposes that should not have been deducted from his business's gross income. ECF No. 69 at 3. Mr. Giles appears to be correct that business expansion expenses should not be deducted from gross business income when calculating net business income.

CHFA Compliance Manual, § 3.9. But Mr. Giles did not provide ACHA with documentation that $7,500 of his business gross earnings were used for business expansion at the time he applied. ECF No. 67-24. ACHA likely did not account for business expansion in their calculations because they didn't have any reason to do so. This allegation does not indicate that CHFA deviated from the CHFA Compliance Manual.

Third, Mr. Giles claims ACHA required him to submit more documentation than required of other applicants. ECF No. 69-2 at ¶ 30. On December 4, 2017 Mr. Giles submitted an ACHA form called Certification of Income for Self-Employed Persons, and attached a 2016 Tax Return, a 2016 Profit and Loss Statement and Business Plan for his business. ECF No. 67-24. On January 10, 2018 ACHA asked Mr. Giles for his signature on an ACHA asset verification form and tenant consent and release of information form, and that he provide a 2017 Profit and Loss Statement within the next 2 days. ECF No. 67-9. Mr. Giles alleges that ACHA's demand for a 2017 profit and loss statement required him, unlike other applicants, to provide two years of financial statements, which is not required under the CHFA Compliance Manual. ECF No. 69-2 at ¶ 30.

As discussed above, the CHFA Compliance Manual § 3.18(B) requires that self-employed applicants submit several forms, including a year-to-date profit and loss statement and their most recent federal tax return, including IRS Form 1040 and Schedule C. CHFA Compliance Manual, § 3.18. The manual also allows applicants to submit their most recent annual profit and loss statement if the person does not file annual tax returns. CHFA Compliance Manual § 3.18(B). To meet the CHFA requirements, when Mr. Giles applied in November 2017 he would have had to submit a year-to-date profit and loss statement covering January through November of 2017. Prior to ACHA's January 10, 2018 request for a 2017 profit

and loss statement Mr. Giles had only provided a 2016 profit and loss statement. By requesting a 2017 year-to-date profit and loss statement ACHA did not deviate from the CHFA Compliance Manual, but rather attempted to comply with it.

It seems quite possible that Mr. Giles was misled by the ACHA Certification of Income for Self-Employed Persons form. This ACHA form lists documents that self-employed individuals must submit for ACHA to verify their income. ECF No. 67-4. The form requires that applicants attach "a copy of [applicant's] 20__ Federal Income Tax returns as filed with the IRS [space left blank for applicant to enter year]; a copy of a Current Profit and Loss Statement; a copy of [applicant's] business plan," and if the applicant has not filed Federal Income Tax Returns as a self-employed person, requires applicants additionally provide "a copy of a current profit-and-loss statement" and "copies of receipts/checks for services provided." *Id.*

While the CHFA Compliance Manual distinguishes between year-to-date and annual profit and loss statements, the ACHA form asks for only a "current profit and loss statement." A reasonable person could conclude that the ACHA form requires only the most recent annual profit and loss statement. However, though the ACHA form makes the process somewhat convoluted, ACHA's subsequent request for a 2017 statement in compliance with the CHFA Compliance Manual does not show a policy deviation that Mr. Giles can hang this claim on.

Fourth, Mr. Giles claims that ACHA refused to properly consider his cash assets when evaluating his income in violation of the CHFA Compliance Manual. ECF No. 69-2 at ¶ 40. Relying on § 3.23 of the manual Mr. Giles says that ACHA's calculation of his income from his checking and savings account should have used the "six-month running balance" of his accounts. ECF No. 69-2 at ¶ 41. § 3.23, called "Asset Valuation Guidelines," provides the method of valuing assets and does not apply to calculating income from assets. CHFA Compliance

Manual, § 3.23.  Only income from assets can be included in the annual income calculation.

CHFA Compliance Manual, § 3.7 "What is Included in Annual Household Income."  Instead, §

3.27, entitled "Calculating Income from Assets," determines how asset income should be

factored into the annual income calculation:

> The actual income from assets must always be documented on the Tenant Income
> Certification (TIC) form. When determining the actual income from an asset,
> always calculate by using the full value of the asset.
>
> If the total cash value of all assets is more than $5,000, imputed income must also
> be calculated using the HUD passbook rate and compared with actual income. On
> the TIC, use the greater of:
> • the actual income from assets, or
> • the imputed income (current HUD passbook rate=0.06 percent)
>
> In addition, when the total value of all assets is greater than $5000, third-party
> verification must be obtained for each asset.

CHFA Compliance Manual, § 3.27.  Section 3.27 does not indicate that the cash value of the

asset should be added to the income calculation; rather it lays out a complex calculation for

estimating income from those assets, which the defendants described during the preliminary

injunction hearing.  ECF No. 15.  It does not appear that defendants have deviated from CHFA

policy in calculating Mr. Giles' income from his assets.

Mr. Giles again points out that ACHA's rental application form is misleading and states a

different policy than what the CHFA Compliance Manual requires.  Under "Income

Qualifications" the ACHA application form states that "[a]pplicants must have a verifiable

minimum gross monthly income of at least 2.5 times the tenant's paid portion of the rent or

verifiable savings/checking balance higher than the rest of the amount for half of the term of

lease."  ECF. No 67-21.  From this Mr. Giles could have reasonably concluded that ACHA

would evaluate his gross income, rather than net income.  He also reasonably could have

concluded that if his income fell short, he would still income qualify if his checking and savings balance were higher than the remaining amount for half of the lease term. Though ACHA has been clear that it is obligated to comply with the CHFA Compliance Manual, and I do not doubt that they are attempting to do so, their own forms and procedures have made it difficult for applicants and ACHA itself to do so.

In sum, Mr. Giles might be right that ACHA did an imperfect job of evaluating his income, from its use of misleading forms to its failure to request a 2017 year-to-date profit and loss statement until a month after Mr. Giles submitted a 2016 profit and loss statement. However, there is no evidence that ACHA's actions amounted to deviations from policy. Instead, there is only evidence showing ACHA's attempts to comply with the CHFA Compliance Manual, despite confusion about what that required. *See, e.g.*, ECF No. 69-37 (showing emails between Niki Rush, Heather Staggs, and Marcia Bross, discussing what documents Mr. Giles must submit to comply with CHFA).

Mr. Giles makes other allegations, including claims that defendants violated LURA in ways unrelated to race-based discrimination. ECF No. 69-2 at ¶ 51. As this Court told Mr. Giles in his temporary restraining order hearing, that is a different lawsuit than the one he brought here.

## CONCLUSION

Defendant has met its burden of showing legitimate, non-discriminatory reasons for its action. Because Mr. Giles has failed to show there is a genuine dispute of material fact as to whether defendant's proffered reasons for denying his application were pretextual, and no other evidence suggesting in any way that the denial of his application was based in whole or in part on his race, he has not met his burden to avoid summary judgment.

**ORDER**

1.  Defendant's motion for summary judgment, ECF No. 67, is GRANTED.

2.  Plaintiff's motion for a protective order, ECF No. 62; defendant's motion to allow witness Heather Staggs to testify from a remote location, ECF No. 79; and defendant's motion in limine, ECF No. 80; are denied as moot.

3.  The civil action and all claims therein are dismissed with prejudice.

4.  As the prevailing party, defendant is awarded its reasonable costs to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 12th day of September, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge